USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Marco Martinez Roman,

                    Petitioner,

          —v—

Thomas Decker, *et al.*,

                    Respondents.

---

20-cv-6752 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Petitioner Marco Martinez Roman brings the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 to remedy his allegedly unlawful detention by Respondents.  Mr. Martinez argues that his detention without a constitutionally adequate bond hearing is in violation of the Due Process Clause of the Fifth Amendment.  As a result, he asks that this Court order that he be given a new bond hearing.  He argues that for the bond hearing to be constitutionally adequate, the Government must bear the burden of establishing by clear and convincing evidence his dangerousness or risk of flight.  In addition, he argues that the Immigration Judge ("IJ") who conducts the new bond hearing must take into account alternatives to detention and Mr. Martinez's ability to pay when setting a bond, and he further argues that the Immigration Judge must weigh as a factor his vulnerability to COVID-19 in assessing suitability for release.  For the reasons that follow, Mr. Martinez's Petition is granted in part.

## I.      BACKGROUND

Mr. Martinez, who is 42 years old, was born in Mexico.  For nearly 25 years, he has resided in Orange County, New York.  Dkt. No. 1 ("Pet.") ¶ 13.  He is the primary caretaker of

his three children, all of whom are United States citizens.  *Id.* ¶¶ 1, 13.  Before he was detained, he worked two jobs: as a dispatcher at Newburgh Taxi and as a cook at Storm King School.  *Id.* ¶ 13.

On September 23, 2019, Mr. Martinez was detained by Immigration and Customs Enforcement ("ICE") and placed in removal proceedings.  *Id.* ¶ 14; Dkt. No. 7 ("Opp. Br.") at 1. On November 27, 2019, Mr. Martinez moved to terminate removal proceedings based on the insufficiency of the evidence that the Department of Homeland Security ("DHS") filed in support of its initial burden to prove Mr. Martinez's alienage.  Pet. ¶ 17.  That motion was denied by an Immigration Judge.  *Id.*  On January 16, 2020, Mr. Martinez then filed an application for cancellation of removal; in support of his application, he pointed to his residence in the United States for over ten years, his "good moral character," and the exceptional and unusual hardship his children would experience if he were deported.  *Id.*  Mr. Martinez had his individual merits hearing on March 9, 2020, where he presented testimony and evidence in support of his application but in which he was prohibited from presenting additional testimonial evidence, including the testimony of his eldest child and of the psychologist who evaluated his children. *Id.*  On April 13, 2020, the Immigration Judge denied Mr. Martinez's application for cancellation.  *Id.*  Mr. Martinez then filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"), arguing that the merits hearing was plagued with legal and procedural errors, including due process violations.  *Id.*  He filed his brief with the BIA on August 14, 2020, and that appeal is currently pending.  *Id.*

Mr. Martinez initially requested a custody redetermination on January 16, 2020, but he voluntarily withdrew that request in order to gather more evidence to meet his burden of proof. *Id.* ¶ 18.  On February 25, 2020, he appeared before a different Immigration Judge and renewed

2

his request for bond.  *Id.* In support of this request, he proffered thirty documents, including evidence of his engagement in alcohol rehabilitation programs and letters from his children, members of his community, and his employers.  *Id.*  Meanwhile, DHS filed only two documents: A Form I-213 Record of Deportable/Inadmissible Alien and a New York State Division of Criminal Justice Services Repository Inquiry.  *Id.*  The Immigration Judge denied Mr. Martinez's request for bond after finding that he had not met his burden of proving that he is not a danger to the community.  *Id.*; *see also* Dkt. No. 1, Ex. D at 5 ("[W]hile he may have equities in the United States, the Respondent did not meet his burden of proof to establish that he does not pose a danger if released.").  Mr. Martinez filed a Notice of Appeal with the BIA on March 20, 2020. Pet. ¶ 18.  The BIA dismissed Mr. Martinez's bond appeal on August 11, 2020, agreeing with the Immigration Judge that Mr. Martinez had not met his burden of establishing that he would not be a danger to the community.  *Id.* ¶ 19.  Mr. Martinez's counsel received the BIA decision on August 18, 2020.  *Id.*  On August 21, 2020, they filed the Petition now before this Court.

In May 2020, Mr. Martinez filed a petition for a writ of habeas corpus in the Southern District of New York challenging his immigration detention on substantive due process grounds in light of COVID-19, and on procedural due process grounds relating to the burden allocation at his bond hearing.  *See Martinez Roman v. Decker*, No. 20-cv-3752 (JGK).  On July 24, 2020, Judge Koeltl denied Mr. Martinez's amended habeas petition.  *See Martinez Roman v. Decker*, No. 20-cv-3752 (JGK), 2020 WL 4273823 (S.D.N.Y. July 24, 2020).  Specifically, Judge Koeltl denied Mr. Martinez's substantive due process claim on the merits and his procedural due process claim without prejudice on the basis that Mr. Martinez had not yet exhausted his administrative remedies. *See id.* at *7 ("Because the appeal of the IJ's bond determination is still pending before the BIA, the petitioner has failed to exhaust his administrative remedies.").  As

3

Mr. Martinez notes, now that the BIA has ruled against him, he has exhausted his administrative remedies. *See* Pet. ¶ 22.

As of the date of this Opinion and Order, Mr. Martinez has been in ICE custody for over a year following his September 23, 2019 arrest.

## II.   DISCUSSION

In their briefing, the parties have identified three principal issues that are in dispute. As explained by the Government in its opposition brief, the first lies at the core of Mr. Martinez's claim: Whether the February 2020 bond hearing was constitutionally infirm due to the IJ's placement of the burden of proof on Mr. Martinez rather than the government, and whether, as a result, Mr. Martinez is entitled to a new bond hearing where the Government carries the burden of proving, by clear and convincing evidence, that Mr. Martinez is either a flight risk or whether his release would pose a danger to the community. Pet. ¶¶ 39–42; Opp. Br. at 2. The other two focus on the nature of the relief requested. Mr. Martinez asserts that the Due Process Clause guarantees his right to have the IJ consider alternatives to detention and his ability to pay the bond, and that the IJ must "weigh[] as a factor in determining suitability for release" the petitioner's "vulnerability to COVID-19." Pet. at 22; Opp. Br. at 2–3.

### A.  The Government Must Bear the Burden of Proof by Clear and Convincing Evidence at a § 1226(a) Bond Redetermination Hearing.

Mr. Martinez argues that his right to due process was violated when the IJ failed to place the burden of proof to establish that he posed a flight risk or a danger to the community on the Government at his bond redetermination hearing. ¶¶ 39–42. The Court agrees, and it concludes, as it did in *Medley v. Decker*, No. 18-cv-7361 (AJN), 2019 WL 7374408 (S.D.N.Y. Dec. 11, 2019), and *Cabanillas Lazo v. Decker*, No. 19-cv-8513 (AJN), Dkt. No. 19 (Order) (S.D.N.Y. Jan. 31, 2020), that at a bond hearing under § 1226(a), the Government must bear the burden of

establishing by clear and convincing evidence that Mr. Martinez poses a flight risk or a danger to the community.

This requirement is constitutional, not statutory.  The Supreme Court has held that "[n]othing in § 1226(a)'s text" requires that the Government establish by clear and convincing evidence the necessity of an individual's detention.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018).  But as the "overwhelming consensus of judges in this District" have found, the Due Process Clause of the Fifth Amendment compels this conclusion.  *See Medley v. Decker*, No. 18-CV-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019), *Fernandez Aguirre v. Barr*, No. 19-CV-7048 (VEC), 2019 WL 3889800, at *3 (S.D.N.Y. Aug. 19, 2019) (collecting cases) (quoting *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2018 WL 6928794, at *15 (S.D.N.Y. Dec. 27, 2018)); *see also Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[E]very court to have considered the constitutional issue presented in this case has agreed with [its] persuasive logic – under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)."); *Darko v. Sessions*, 342 F. Supp. 3d 429, 434–36 (S.D.N.Y. Oct. 19, 2018); *Linares Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018).

The Fifth Amendment's Due Process Clause protects all persons in the United States from the deprivation of "liberty . . . without due process of law."  U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These protections apply "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and they apply to immigration detention as much as criminal detention.  *Zadvydas*, 533 U.S. at 693.  And in analyzing the constitutional requirements of the Due Process Clause, the

Supreme Court "has repeatedly reaffirmed that 'civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protection.'" *Linares Martinez v. Decker*, 2018 WL 5023946, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).  Following these principles, the Court has held that the Due Process Clause requires that the Government bear the burden of establishing the necessity of civil commitment in various contexts.  *See, e.g.*, *Addington*, 441 U.S. at 427 (requiring the state to justify civil commitment by proof "more substantial than a mere preponderance of the evidence"); *Foucha v. Louisiana*, 504 U.S. 71, 75, 80 (1992) (invalidating Louisiana statute permitting the indefinite detention of insanity acquittees that placed the burden on them to prove they were not dangerous).  Indeed, "due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Cooper v. Oklahoma,* 517 U.S. 348, 363 (1996) (alterations in original) (quoting *Santosky v. Kramer,* 455 U.S. 745, 756 (1982)).

The present context is no different.  Mr. Martinez's interest in his physical liberty during the pendency of the resolution of his immigration proceedings strikes at the core of the Due Process Clause's concerns.  *See Linares Martinez*, 2018 WL 5023946, at *2 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).  Balancing this interest against the Government's interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community," *Zadvydas*, 533 U.S. at 690, "supports imposing the greater risk of error on the Government—specifically, by allocating to it the burden of proof." *Darko*, 342 F. Supp. 3d at 435 (quoting *Linares Martinez*, 2018 WL 5023946, at *3).  *See also Medley*, 2019 WL 7374408, at *3.

Furthermore, as the "overwhelming majority of courts to consider the question" have concluded, "imposing a clear and convincing standard would be most consistent with due process." *Linares Martinez*, 2018 WL 5023946, at *4 (quoting *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018)).  As the *Linares Martinez* Court observed, this standard is most faithful to the Supreme Court's treatment of what the Due Process Clause requires in the civil context.  *Linares Martinez*, 2018 WL 5023946, at *4.  And it most faithfully adheres to the bottom-line principle that the Due Process Clause mandates "an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money,'" insofar as "this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty.'"  *Santosky*, 455 U.S. at 756.  Thus, "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection" in this context.  *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011) (quoting *Addington*, 441 U.S. at 427).

In sum, the Court concludes that the Due Process Clause of the Fifth Amendment requires the Government to establish dangerousness or risk of flight at any bond hearing under § 1226(a) by clear and convincing evidence.  Accordingly, it grants Mr. Martinez's Petition on this ground.

### B.  The Scope of the Remedy

In his Petition, Mr. Martinez asks the Court to require that the Immigration Judge (1) consider alternatives to detention and Mr. Martinez's ability to pay in fashioning the appropriate

7

relief; and (2) "weigh[] as a factor in determining suitability for release" the Mr. Martinez's "vulnerability to COVID-19."  Pet. at 22.  For the reasons that follow, the first of these requests is granted, while the second is denied.

The Supreme Court has found that immigration detention must bear a "reasonable relation to the purpose for which the individual [was detained]." *Zadvydas*, 533 U.S. at 690 (citation omitted).  Immigration detention serves two legitimate purposes: "[E]nsuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." *Id.*  Thus, "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must 'bear[] [a] reasonable relation to [its] purpose.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 690).  Requiring that the adjudicator consider alternative conditions of release and the detainee's ability to pay in setting bond thus ensures that detention is not imposed arbitrarily.  *See Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 317 (S.D.N.Y. 2019) ("Numerous courts in this Circuit have concluded that the Due Process Clause requires that an IJ consider ability to pay and alternative conditions of release in setting bond because a bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." (citations omitted)).  *Cf. Bearden v. Georgia*, 461 U.S. 660, 672 (1983) ("Only if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a probationer who has made sufficient bona fide efforts to pay.").

In its opposition, the Government "does not argue against the inclusion of those conditions in this particular case," but nonetheless asks that "the Court properly tailor such conditions to apply only to the immigration judge's consideration of flight risk."  Opp. Br. at 4. Specifically, it argues that "if the alien presents a danger to the community, he is not supposed to be released," and that "only if the alien is not a danger may the immigration judge consider the amount of bond necessary to ensure future appearances and any alternative conditions of release suggested by the alien and within the immigration judge's authority to order for purposes of mitigating flight risk."  *Id.* at 5.

The Government's analysis is unconvincing, and its fatal flaw is that it conflates the substantive due process question—whether an individual *may* be detained or denied bail—with the procedural due process question—whether that individual is entitled to a hearing in which the adjudicator considers all relevant facts to establish whether detention is in fact necessary.  That is, the relevant question is not whether the Government *may* impose "detention without bond," *Carlson v. Landon*, 342 U.S. 524, 529 (1952), but what procedures it must follow before doing so.  And, as an overwhelming number of courts in this district has found, *procedural* due process requires that an adjudicator take into account the detainee's ability to pay and whether any alternative conditions of release may further the Government's legitimate interest in continued detention prior to setting a bond.  *See, e.g.*, *Rodriguez Sanchez*, 431 F. Supp. 3d at 317; *Fernandez Aguirre v. Barr*, No. 19-CV-7048 (VEC), 2019 WL 3889800, at *2–3 (S.D.N.Y. Aug. 19, 2019); *Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *3 (S.D.N.Y. May 15, 2019); *Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *4 (S.D.N.Y. Apr. 1, 2019); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at

*6 (S.D.N.Y. Aug. 20, 2018); *Brissett v. Decker*, 324 F. Supp. 3d 444, 454 (S.D.N.Y. 2018); *Lett v. Decker*, 346 F. Supp. 3d 379, 389 (S.D.N.Y. 2018).

 This procedural requirement is not outcome-determinative.  Considering whether there are adequate alternatives to detention, for instance, may well look different in the context of analyzing whether the detainee is a flight risk and whether the detainee may pose a danger to the community.  But the mere fact that the specific circumstances may compel different outcomes does not mean, as the Government suggests, that the Due Process Clause ceases to apply in one context.  Rather, the procedural guarantees apply in equal force in both contexts.  *See, e.g.*, *Fernandez Aguirre*, 2019 WL 4511933, at *5 & n.3 (noting that consideration of alternatives to detention is necessary to "determine whether measures less intrusive than detention can . . . reasonably assur[e] the safety of the community."); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 242 (W.D.N.Y. 2019) (noting that a constitutionally adequate bond hearing requires that the IJ "consider alternatives before resorting to detention . . . .").  For this reason, the Court agrees with the Petitioner that the Due Process Clause requires that the IJ must consider alternative conditions of release and the detainee's ability to pay before making an ultimate determination.

 On the other hand, the Court is not persuaded that an order specifically directing the IJ to consider Mr. Martinez's health conditions in light of the COVID-19 pandemic is appropriate.  Facts regarding the danger of COVID and the dangers posed as a result of underlying health conditions change over time.  The Court recognizes that Mr. Martinez presents a number of health conditions that may render him especially vulnerable to COVID-19.  *See* Pet. ¶ 15, Ex. G.  But as the Government argues, Opp. Br. at 5–6, there is no need for the Court to order the IJ to consider specific factual information in this regard in light of 8 C.F.R. § 1003.19(d), which provides that "[t]he determination of the Immigration Judge as to custody status or bond may be

based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."  Indeed, the IJ is well-positioned to evaluate the relevance and the accuracy of the Government's claims on the merits, including the weight that should be given to Petitioner's argument regarding the dangers posed by the COVID-19 pandemic at the particular point in time that it is raised at a bond hearing.

## III.   CONCLUSION

Mr. Martinez's Petition is hereby GRANTED in part.  Because the Court resolves this Petition on the papers, Mr. Martinez's request for oral argument is DENIED.

Within seven calendar days of the date of this Opinion and Order, Respondents must provide Mr. Martinez with a bond hearing before an IJ at which the Government bears the burden of establishing, by clear and convincing evidence, that he poses a danger to the community or a flight risk.  At this hearing, the IJ must consider alternative conditions of release and Mr. Martinez's ability to pay.  Should Respondents fail to provide Mr. Martinez with such a bond hearing within seven calendar days, they must immediately release him.

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated:  September 25, 2020
         New York, New York

_____
ALISON J. NATHAN
United States District Judge

11